# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM JOHNAKIN, <br>     Plaintiff, | : <br> : <br> : |
| v. | :     CIVIL ACTION NO. 18-CV-749 <br> : |
| BERKS COUNTY JAIL SYSTEM, *et al.*, <br>     Defendants. | : <br> : |

FILED
MAY 21 2018
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

TUCKER, J.                                                                                                                      MAY 17, 2018

Plaintiff William Johnakin, a pretrial detainee incarcerated at the Berks County Jail, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983 in which he primarily challenges the constitutionality of the conditions at the Berks County Jail. In an Order entered on the docket April 11, 2018 (ECF No. 9), the Court granted Johnakin leave to proceed *in forma pauperis*, construed one of his filings as a motion to file an amended complaint, and granted that motion. Johnakin filed an Amended Complaint (ECF No. 11), which is currently before the Court. He also filed a statement indicating that he would like to add more claims to his Amended Complaint. (ECF No. 12.) For the following reasons, the Court will dismiss the claims raised in the Amended Complaint and additional statement pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Johnakin has failed to state a claim.

## I.      FACTS

The Amended Complaint names the following Defendants: (1) Berks County Jail System; (2) Warden of BCJS Janine Quigley (misspelled Janice Quigley); (3) Chief Deputy Warden of BCJS Smith; (4) Prime Care Medical; (5) the Berks County District Attorney's Office; (6) Berks County; and (7) City of Reading, P.A. A review of public dockets reflects that Johnakin is

1

awaiting trial in the Berks County Court of Common Pleas on a charge of retail theft. *See Commonwealth v. Johnakin*, Docket No. CP-06-CR-0000322-2018. The docket reflects that he is represented by counsel from the Public Defender's Office. Johnakin's Amended Complaint sets forth a host of grievances related to his prosecution and the conditions in which he is confined.

Johnakin in part challenges the manner in which he was charged in his criminal case. He indicates that prosecutors have used his misdemeanors in another state as a basis for charging him with a felony, which he believes constitutes a double jeopardy violation. He also suggests that the District Attorney's Office "use[d] the jail and its officers to steal key information from [his] cell pertaining to said/such case to learn [his] defense strategies and in turn make said trial unfair for [him] . . . ." (Am. Compl. ECF No. 11 at 7-8.)[1] The Amended Complaint also alludes to Johnakin's "right to examine/receive a copy of [his] criminal history." (*Id.* at 6.)

The remainder of Johnakin's Amended Complaint challenges the conditions at the Berks County Jail. His pleading reflects his belief that the facility is not well run and that inmates receive no communication. He also raises more specific complaints about certain conditions at the jail.

First, Johnakin alleges that he has the "right to be told why [he] can't work inside the jail when at the same time in 2017 [he] was allowed [to] work within the jail." (*Id.* at 6.) In that regard, Johnakin contends he was informed that to be a unit worker on the block, he would need medical clearance but was not told why. Johnakin alleges it could be months before he sees the doctor, as opposed to a nurse, because the medical provider, Prime Care, allegedly has only one doctor for seven county jails. Johnakin appears frustrated that the nurses cannot answer why he

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM-ECF system.

needs medical clearance and states that he "think[s] they are discriminating against [him]." (*Id.* at 11.)

Second, Johnakin alleges that he has the "right to receive [his] mail in a timely fashion not when the jail deems it good for them to give it out." (*Id.* at 7.) In that regard, Johnakin alleges his family informed him that they sent mail but that he only received two letters. He also received notices that certain letters were returned, one "because the envelope had a stain on it" and one because "the sender didn't put [his] BCJS inmate numbers on it." (*Id.* at 12.)

Third, Johnakin alleges that he has "the right to ask for soap to clean [his] body without being charged a fee" if he is indigent. (*Id.* at 7.) He does not allege that he was denied soap, or further elaborate on that allegation.

Fourth, Johnakin alleges that he has "the right to eat [his] food in the day room provided and not [be] locked up in a cell if [he is] not in the box like [an] animal." (*Id.*) Along those lines, Johnakin contends that "they lock us up 21 hrs a day" and that he "would like to eat [his] food without having to look at a toilet that is sometimes filled with feces and urine cause some of the officers don't want to unlock it." (*Id.* at 16.) He adds that the jail can be locked down "for days at a time" without anyone telling the inmates. (*Id.* at 13.)

Fifth, Johnakin contends that he has a "right to feel safe in [the Berks County Jail] or any institution without having to see officers carrying around shotguns and tazers [sic] in and out of inmate housing units." (*Id.* at 7.) That allegation appears to relate to his concern that some jail employees are permitted to carry Tasers at the jail. The Amended Complaint also implies that one of the officers stationed on the way to the medical unit has a shotgun. (*Id.* at 16.)

Finally, Johnakin alleges that on April 12, 2018, Officer Drosdak, who is not a Defendant in this case, grabbed food out of his hand and put her finger in it, thereby contaminating the food.

3

She ultimately threw the food away. The Amended Complaint suggests that the officer also threw away the food of six other inmates, only one of whom was white while the others were "either Spanish or [Johnakin] the only Black [African American] person." (Am. Compl. ECF No. 11, at 14.)

Johnakin indicates that he named the Berks County Jail System as a Defendant because "most events happen[ed] within [the] Berks County Jail System." (*Id.* at 10.) He named the Warden and Deputy Warden because they "run and therefore have to have knowledge of all and everything that happens within Berks County Jail." (*Id.*) Johnakin claims that the Berks County District Attorney's Office's "actions cast unfavorable shadows on the City of Reading and Berks County," and that the City and County "are condoning such [unspecified] actions by letting these actions continue to happen." (*Id.*)

In the section of the form complaint used by Johnakin to file his Amended Complaint that asks about injuries, Johnakin wrote "-NA-". (*Id.* at 15.) He appears to be asking for injunctive relief including an order establishing that he gets to: (1) eat his food without having to look at the toilet or have an officer stick her fingers in it; (2) feel safe in the jail; (3) get soap if he doesn't have money to buy any; and (4) have a fair trial.

A few weeks after having submitted his Amended Complaint, Johnakin submitted a second filing in which he indicates his desire to add more claims based on the conditions at the Berks County Jail. Although these claims are not contained in the Amended Complaint, the Court will address them at this time. First, he appears to be challenging a search on k-block that was conducted in a "rigorous way." (ECF No. 12 at 2.) Johnakin appears to be upset that, when he asked the reason for the search, he was told "you know why" even though he did not know of the reason for the search. (*Id.*) Second, Johnakin claims that he is missing one of three copies of his

4

§ 1983 complaint and questions whether the "jail makes a habit of stealing inmates legal work now." (*Id.* at 3.) Third, he alleges that an officer strip-searched him in his cell while the door was open so that other inmates could see the search. Fourth, he complains that inmates are not permitted to "give anyone any food item" and that doing so is treated as a punishable offense. (*Id.* at 4.) He also complains that "they even tell [inmates] what [they] can or cannot do with [their] commissary" and that inmates cannot "mix any of our commissary together." (*Id.*)

## II. STANDARD OF REVIEW

As Johnakin is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Johnakin is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Johnakin has not stated a constitutional claim for the following reasons.

Here, Johnakin has not stated a constitutional claim for the following reasons.

### A. Claims Against the Berks County Jail System

County jails and departments of county jails are not "persons" that are "subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No. CIV A 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Accordingly, the "Berks County Jail System" is not a proper party to this case. The Court will therefore dismiss Johnakin's claims against that Defendant.

### B. Claims Against the Warden and Deputy Warden

Johnakin has not stated a claim against the Warden or Deputy Warden of the Berks County Jail. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

6

the Warden and Deputy Warden, especially in light of the number of conditions challenged in the Amended Complaint.

### C. Claims Based on Prosecution and Against the District Attorney's Office

Johnakin's claims based on his prosecution fail. The Court understands Johnakin to be seeking injunctive relief in the form of an order directing that he receive a "fair trial" (Am. Compl. at 16), based on allegations that the District Attorney's Office is acting unfairly in his criminal case by increasing his charges based on his prior convictions and using unspecified information obtained from his cell.[2] However, it is inappropriate for this Court to intrude in Johnakin's state criminal proceeding. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Duran v. Weeks*, 399 F. App'x 756, 758–59 (3d Cir. 2010) (per curiam) ("Since Duran's section 1983 action seeking to enjoin his criminal prosecution presents the classic case for *Younger* abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate.").

If Johnakin believes that his current prosecution suffers from a constitutional deficiency, he should raise his claims before the state court overseeing his prosecution. Furthermore, to the extent Johnakin alludes to his "right to examine/receive a copy of [his] criminal history," (Am. Compl. at 6), he could ask his court-appointed counsel for that information. That statement does not state a basis for a constitutional claim against the Defendants in this case. As Johnakin has not stated a constitutional claim based on his allegations against the District Attorney's Office in connection with his prosecution, he also has not stated a claim against the City of Reading or Berks County in connection with his allegation that the City and County "are condoning such actions by letting these actions continue to happen." (*Id.* at 10.)

---

[2] The latter allegation is particularly vague. Nothing in the Amended Complaint describes the information that Johnakin believes was taken from his cell or describes how that information is being used against him in a manner that calls into question the fairness of his state criminal proceeding.

### D. Claims Based on Prison Employment

Johnakin has not stated a claim based on his allegation that he has not been permitted to work during his incarceration. Inmates do not have a constitutional right to employment during incarceration. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (per curiam) ("[P]risoners enjoy no protected interest in prison employment."). Accordingly, Johnakin cannot state a claim based on the fact that he has not been permitted to work during his incarceration. The allegedly insufficient medical staffing, which Johnakin contends is delaying his ability to obtain prison employment, also does not give rise to a claim because nothing suggests that the staffing levels have caused Johnakin's serious medical needs to go untreated (to the extent he has any).[3] *See, e.g., Crawford v. McMillan*, 660 F. App'x 113, 116-17 (3d Cir. 2016) (per curiam) (to establish Fourteenth Amendment violation, a detainee must allege facts showing that prison officials were deliberately indifferent to a serious medical need).

### E. Claims Based on Mail

Johnakin alleges his family informed him that they sent mail but that he only received two letters. He also received notices that certain letters were returned, one "because the envelope had a stain on it" and one because "the sender didn't put [his] BCJS inmate numbers on it." (Am. Compl. at 12.) Prisoners have a First Amendment right to use the mail. *Jones v.*

---

[3] Likewise, Johnakin's conclusory allegation that he "think[s] [the nurses] are discriminating against [him]" by failing to provide him with information, does not state a claim. (Am. Compl. ECF No. 11 at 11.) Nothing suggests that he was treated differently from any other inmate or discriminated against on an inappropriate basis. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

8

*Brown*, 461 F.3d 353, 358 (3d Cir. 2006). "Restrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)) (alteration in original). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.* at 351. Furthermore, a single instance of damaged or censored mail does not equate to a constitutional violation. *See Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

Here, it is difficult to determine from the Amended Complaint whether Johnakin is challenging a prison policy or whether he is challenging the two specific instances when mail was returned to him. Two instances of confiscated mail do not on their own give rise to a constitutional violation. *See Bieregu*, 59 F.3d at 1452. Furthermore to state a § 1983 claim against a municipality, such as the municipal entities named as Defendants in this case, a plaintiff must allege that the municipality or entity's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Johnakin does not specifically identify a policy or custom that led to the issues with his mail, so he has also failed to state a claim on that basis. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (to satisfy the pleading standard for municipal liability under § 1983, a plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was").

9

## F. Claims Based on Soap

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373. Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

In his Amended Complaint, Johnakin alleges that he has "the right to ask for soap to clean [his] body without being charged a fee" if he is indigent. (Am. Compl. at 7.) He does not

10

allege that he was denied soap, indicate whether soap is available without a fee, or further elaborate on that allegation. Accordingly, there are insufficient facts in the Amended Complaint to plausibly establish that Johnakin's constitutional rights were violated in connection with his allegation about soap. *See McCray v. Wittig*, No. CIV.A. 14-0824 WJM, 2014 WL 1607355, at *3 (D.N.J. Apr. 21, 2014) ("Because Plaintiff was confined in the holding cell under deplorable conditions [including lack of personal hygiene supplies] for only two days, and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished.").

### G. Claims Based on General Conditions

Johnakin also has not stated a claim based on the general conditions at the Berks County Jail. Again, his conditions claims depend on whether his allegations plausibly establish that the conditions in question amount to punishment. Courts have held that the practice of requiring inmates to eat in a cell containing a toilet does not violate the Constitution.[4] *See Detainees of Brooklyn House of Det. for Men v. Malcolm*, 520 F.2d 392, 396 n.3 (2d Cir. 1975) ("The discomfort of eating in a cell is not, of itself, an unconstitutional hardship."); *Randall v. Cty. of Berks*, No. CV 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not

---

[4] Many of the cases addressing this practice concern the Eighth Amendment, which applies to convicted prisoners. *See Herb v. Dauphin Cty. Prison*, Civ. A. No. 12-1402, 2012 WL 3062225, at *2 (M.D. Pa. July 26, 2012) ("Albeit distasteful, being required to eat in his cell under such conditions [i.e., where a foul ammonia odor from the toilet caused plaintiff's eyes to burn] does not amount to an Eighth Amendment deprivation."); *Walters v. Berks Cty. Prison*, Civ. A. No. 11-6357, 2012 WL 760849, at *1 (E.D. Pa. Mar. 9, 2012) (allegations that plaintiff had to sleep and eat next to a toilet while incarcerated at the Berks County Jail failed to state a claim); *Flores v. Wagner*, Civ. A. No. 11-1846, 2011 WL 2681596, at *5 (E.D. Pa. July 8, 2011) ("Requiring an inmate to eat in a cell a few feet away from a toilet is insufficient to implicate a conditions of confinement claim that is repugnant to contemporary standards of decency."); *Smith v. U.S. Penitentiary Lee*, Civ. A. No. 11-77, 2011 WL 767165, at *2 (W.D. Va. Feb. 25, 2011) (plaintiff failed to state claim based on allegations that he was required to eat meals in cell with toilet sometimes filled with excrement).

violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cty. Jail*, No. 1:12CV586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the Constitution), *report and recommendation adopted*, No. 1:12CV586, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre v. Wagner*, Civ. A. No. 11-2191, 2012 WL 299652, at *4 & *4 n.4 (E.D. Pa. Feb. 1, 2012) ("[A]s other courts have held, we conclude that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment."); *Kinser v. Cty. of San Bernardino*, No. ED CV 11-0718-RGK, 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011), (plaintiff's allegation that "she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet" did not state a Fourteenth Amendment claim), *report and recommendation adopted*, No. CV 11-0718-RGK PJW, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011). Indeed, this particular practice at Berks County Jail has been held to conform to the Fourteenth Amendment as a legitimate means of managing overcrowding and maintaining security. *See Randall*, 2015 WL 5027542, at *15; *Mestre*, 2012 WL 299652, at *4. Accordingly, if Johnakin is attempting to raise claims based on the fact that he is required to eat in a cell with a toilet, his claims fail.

Johnakin also has not stated a claim based on his allegations that "they lock us up 21 hrs a day" and that the jail can be locked down "for days at a time" without anyone telling the inmates. (Am. Compl. at 13 & 16.) Those allegations are vague, and do not plausibly suggest that the conditions in question are arbitrary measures intended to punish detainees rather than to maintain security. The Amended Complaint does not describe the frequency of the lockdowns or describe the conditions in which the inmates, including Johnakin, are housed during the lockdowns when they occur. Furthermore, Johnakin has suffered no harm as a result of those

conditions. Accordingly, as pled, the Amended Complaint does not establish a constitutional violation based on the lockdowns.

### H. Claims Based on Tasers

Johnakin cannot state a constitutional claim based on his challenge to the fact that guards are permitted to carry Tasers and the fact that one officer has a shotgun. Nothing in the Amended Complaint suggests that the prison employees used those weapons in a manner that threatened Johnakin's safety or caused him harm, or that they used them at all. Instead, Johnakin generally challenges the presence of those weapons in the jail. However, the existence of Tasers or other weapons for security purposes in a jail or prison setting does not, without more, give rise to a constitutional violation. *Cf. Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (per curiam) (explaining that "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment"); *Banks v. Mozingo*, 423 F. App'x 123, 126 (3d Cir. 2011) (per curiam) ("[T]he use of these products [Tasers and mace] does not in itself amount to an Eighth Amendment violation." (citing *Couden v. Duffy*, 446 F.3d 483, 505-06 (3d Cir. 2006)); *Brown v. Beard*, No. CIV. A. 07-637, 2011 WL 1085890, at *15 (W.D. Pa. Mar. 21, 2011) ("The fact that prison authorities employ the use of restraint chairs, body restraints or taser guns does not, in and of itself, allege a violation of the Eighth Amendment.").[5]

---

[5] Although most cases address the use of Tasers in the context of the Eighth Amendment, those cases are analogous to the Fourteenth Amendment context. In any event, Johnakin's allegations fail to establish that the weapons in question are being used in a manner that amounts to punishment of pretrial detainees.

13

### I. Claims Based on Fingers in Food

Johnakin has not stated a claim based on the incident with Officer Drosdak, who allegedly grabbed food out of his hand, put her finger in it, and ultimately threw the food away. Although the Court does not condone the officer's behavior, the contamination or deprivation of one meal is not an objectively serious deprivation that amounts to a constitutional violation. *See Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) ("[I]solated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional."); *cf. Rodriguez v. Nichols*, 521 F. App'x 47, 48 (3d Cir. 2013) (per curiam) (holding that a "one-time adulteration" of inmate's food with rodent body parts did not equate to an Eighth Amendment violation). Furthermore, Johnakin does not allege that he suffered any injury as a result of the incident.

Johnakin, who is black, also has not stated a claim based on his allegation that the officer contaminated his food and the food of six other inmates, one of whom was white while the rest were "Spanish." (Am. Compl. at 14.) If Johnakin is attempting to bring an Equal Protection claim, his allegations do not establish that he was treated differently based on his race. To the contrary, they reflect that Officer Drosdak treated this particular group of seven inmates the same, regardless of race.

Even if Johnakin had stated a claim based on the incident with Officer Drosdak, nothing in the Amended Complaint provides a basis for holding any of the named Defendants liable for the officer's conduct. As noted above, the Warden and Deputy Warden cannot be held vicariously liable based on the conduct of their employees. Furthermore, nothing suggests that Officer Drosdak was acting pursuant to a municipal policy or custom when she contaminated and confiscated Johnakin's meal. *See Monell*, 436 U.S. at 694.

## J. Claims Raised in Statement

The allegations in Johnakin's statement also do not give rise to a claim for relief. Johnakin cannot challenge the search of his cell on Fourth Amendment grounds because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Additionally, nothing in the Constitution requires prison officers to inform Johnakin why they are conducting a search. To the extent Johnakin is complaining about the loss of one copy of his complaint, he has not established a basis for a constitutional claim, whether for denial of access to courts or for the alleged "stealing" of his legal work. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) ("[D]eprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy.").

Johnakin's allegation that he may not share his food with other inmates who are hungry fails to state a due process claim. Nothing suggests that Johnakin is being punished or harmed; to the contrary, it appears that he has excess food that he is hoping to share with others. While that may be a kind sentiment, it is not constitutionally required. Johnakin's allegations about mixing commissary are too generalized to give rise to a claim. He does not provide sufficient detail to build on that allegation or raise any allegations to indicate how he has been personally affected by the restrictions, if at all. Finally, to the extent Johnakin is raising claims based on an

15

incident when an officer strip-searched him in view of other inmates, he has not alleged how any of the named Defendants could be held liable under § 1983 in connection with this event.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Johnakin's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give Johnakin an opportunity to file a second amended complaint in the event he can state a plausible claim against an appropriate defendant or defendants. An appropriate Order follows.

BY THE COURT:

_____
**PETRESE B. TUCKER, J.**