IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM JOHNAKIN, :
    Plaintiff, :
     :
v. : CIVIL ACTION NO. 18-CV-0749
     :
BERKS COUNTY JAIL SYSTEM, *et al.*, :
    Defendants. :

FILED
JUN 2 6 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

## MEMORANDUM

TUCKER, J.                                                                                                                                  JUNE 25, 2018

Plaintiff William Johnakin, a pretrial detainee incarcerated at the Berks County Jail who is proceeding *in forma pauperis*, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983. Johnakin challenges the constitutionality of the conditions at the Berks County Jail and a sentence imposed upon him in state criminal proceedings. Currently before the Court is Johnakin's Second Amended Complaint. For the following reasons, the Court will dismiss several of Johnakin's claims, but allow him to proceed on his claims against Officer Drodsak.

### I.    FACTS AND PROCEDURAL HISTORY

A review of public dockets reflects that in 2017, Johnakin pled guilty in the Berks County Court of Common Pleas to three charges of retail theft and was sentenced to six to twenty-three months of incarceration. *See Commonwealth v. Johnakin*, Docket Nos. CP-06-CR-0001332-2017, CP-06-CR-0001331-2017, & CP-06-CR-0000109-2017. Public dockets also reflect that Johnakin is awaiting trial in the Berks County Court of Common Pleas on yet another charge of retail theft. *See Commonwealth v. Johnakin*, Docket No. CP-06-CR-0000322-2018. Johnakin was represented by counsel from the Berks County Public Defender's Office, but in May of 2018, conflict counsel was appointed to represent him in his cases. He has filed for post-

1

conviction relief in his 2017 cases, and has been charged in those cases with violating probation or parole. In the instant civil action, Johnakin sets forth a host of grievances related to his sentence and the conditions in which he is confined.

In a Memorandum and Order docketed on May 22, 2018, the Court dismissed Johnakin's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The Amended Complaint named the following Defendants: (1) Berks County Jail System; (2) Warden of BCJS Janine Quigley (misspelled Janice Quigley); (3) Chief Deputy Warden of BCJS Smith; (4) Prime Care Medical; (5) the Berks County District Attorney's Office; (6) Berks County; and (7) City of Reading, P.A. Johnakin in part challenged the manner in which he was charged in his criminal case. He indicated that prosecutors have used his misdemeanors in another state as a basis for charging him with a felony, which he believes constitutes a double jeopardy violation. He also suggested that the District Attorney's Office "use[d] the jail and its officers to steal key information from [his] cell pertaining to said/such case to learn [his] defense strategies and in turn make said trial unfair for [him] . . . ." (Am. Compl. ECF No. 11 at 7-8.)[1] The Amended Complaint also alluded to Johnakin's "right to examine/receive a copy of [his] criminal history." (*Id.* at 6.)

The remainder of Johnakin's Amended Complaint challenged the conditions at the Berks County Jail. His pleading reflected his belief that the facility is not well run and that inmates receive no communication. He also raised more specific complaints about certain conditions at the jail.

First, Johnakin alleged that he has the "right to be told why [he] can't work inside the jail when at the same time in 2017 [he] was allowed [to] work within the jail." (*Id.* at 6.) He

---

[1] The Court uses the pagination assigned to Johnakin's filings by the CM-ECF system.

appeared to be disappointed that he would require medical clearance to work, and it would take some time for that to happen. Second, Johnakin alleged that he has the "right to receive [his] mail in a timely fashion not when the jail deems it good for them to give it out." (*Id.* at 7.) In that regard, Johnakin alleged that his family informed him that they sent mail but that he only received two letters. He also received notices that certain letters were returned, one "because the envelope had a stain on it" and one because "the sender didn't put [his] BCJS inmate numbers on it." (*Id.* at 12.)

Third, Johnakin alleged that he has "the right to ask for soap to clean [his] body without being charged a fee" if he is indigent. (*Id.* at 7.) He did not allege that he was denied soap, or further elaborate on that allegation. Fourth, Johnakin alleged that he has "the right to eat [his] food in the day room provided and not [be] locked up in a cell if [he is] not in the box like [an] animal." (*Id.*) Along those lines, Johnakin contended that "they lock us up 21 hrs a day" and that he "would like to eat [his] food without having to look at a toilet that is sometimes filled with feces and urine cause some of the officers don't want to unlock it." (*Id.* at 16.) He added that the jail can be locked down "for days at a time" without anyone telling the inmates. (*Id.* at 13.)

Fifth, Johnakin contended that he has a "right to feel safe in [the Berks County Jail] or any institution without having to see officers carrying around shotguns and tazers [sic] in and out of inmate housing units." (*Id.* at 7.) That allegation appeared to relate to his concern that some jail employees are permitted to carry Tasers at the jail. The Amended Complaint also implied that one of the officers stationed on the way to the medical unit has a shotgun. (*Id.* at 16.)

Finally, Johnakin alleged that Officer Drosdak, who was not named as a Defendant, grabbed food out of his hand and put her finger in it, thereby contaminating the food. She ultimately

3

threw the food away. The Amended Complaint suggested that the officer also threw away the food of six other inmates, only one of whom was white while the others were "either Spanish or [Johnakin] the only Black [African American] person." (Am. Compl. ECF No. 11, at 14.)

Johnakin indicated that he named the Berks County Jail System as a Defendant because "most events happen[ed] within [the] Berks County Jail System." (*Id.* at 10.) He named the Warden and Deputy Warden because they "run and therefore have to have knowledge of all and everything that happens within Berks County Jail." (*Id.*) Johnakin claimed that the Berks County District Attorney's Office's "actions cast unfavorable shadows on the City of Reading and Berks County," and that the City and County were "condoning such [unspecified] actions by letting these actions continue to happen." (*Id.*)

A few weeks after having submitted his Amended Complaint, Johnakin submitted a second filing in which he indicated his desire to add more claims based on the conditions at the Berks County Jail. In that filing, Johnakin first appeared to be challenging a search that was conducted in a "rigorous way." (ECF No. 12 at 2.) Second, Johnakin claimed that he was missing one of three copies of his § 1983 complaint and questioned whether the "jail makes a habit of stealing inmates legal work now." (*Id.* at 3.) Third, he alleged that an officer strip-searched him in his cell while the door was open so that other inmates could see the search. Fourth, he complained that inmates are not permitted to "give anyone any food item" and that doing so is treated as a punishable offense. (*Id.* at 4.) He also complained that "they even tell [inmates] what [they] can or cannot do with [their] commissary" and that inmates cannot "mix any of our commissary together." (*Id.*)

As noted above, the Court concluded that Johnakin's Amended Complaint and his subsequent statement did not state a claim for relief. The Court explained that the Berks County

4

Jail System was not a proper Defendant because correctional facilities are not considered "persons" subject to liability under § 1983. Johnakin had also failed to state a claim against the Warden or Deputy Warden because he had not alleged any facts reflecting their personal involvement in the claimed constitutional violations. The Court also explained to Johnakin that it could not intervene in his state criminal proceeding, so it was not proper for him to raise alleged constitutional deficiencies regarding that proceeding in this case.

Turning to Johnakin's challenges to the conditions at the Berks County Jail, the Court first explained that Johnakin could not state a claim based on his inability to work during his incarceration because inmates do not have a constitutional right to prison employment. Second, the Court rejected Johnakin's claims based on the mail because two instances of confiscated mail do not give rise to a constitutional violation and, if Johnakin was challenging a policy or custom related to the processing of mail, the basis for that claim was not clear from his pleading. Third, Johnakin's assertion that he has the right to ask for soap without being charged a fee did not state a claim because Johnakin's allegations did not establish that the conditions at the Berks County Jail amounted to punishment.

Fourth, Johnakin could not state a constitutional claim based on having to eat in his cell near a toilet because numerous courts have rejected similar claims. Fifth, Johnakin's vague allegations about being locked down failed to provide sufficient factual allegations to state a claim as pled. Sixth, Johnakin failed to state a claim based on the presence of weapons in the jail because nothing suggested that those weapons were used in a manner that caused him harm or otherwise violated his rights. Seventh, Johnakin failed to state a claim based on the fact that Officer Drosdak stuck her fingers in his food because the deprivation of one meal does not amount to a constitutional violation and, to the extent Johnakin was raising an equal protection

claim, nothing suggested that he was being treated differently due to his race in light of his allegations that Officer Drosdak treated inmates of other races similarly. In any event, Johnakin failed to name Officer Drosdak as a Defendant, and the Court explained to Johnakin that there was no basis for holding any other Defendant liable for her actions.

Regarding the claims in the statement that Johnakin filed subsequent to his Amended Complaint, the Court explained that the Fourth Amendment's prohibition on unreasonable searches and seizures does not apply in prison cells. Johnakin also failed to state a claim for denial of access to the courts based on the fact that one copy of his complaint went missing, as he failed to allege any injury. Furthermore, if he was concerned that prison guards stole the complaint, he had other remedies that precluded a due process claim. Finally, Johnakin failed to state a claim based on his generalized allegations about prison commissary and food sharing. The Court gave Johnakin leave to file a second amended complaint in the event he could cure the deficiencies in his claims.

Johnakin returned with a Second Amended Complaint, which is currently pending. The caption lists the Berks County Jail System as the Defendant, but in the body of the Second Amended Complaint, Johnakin identifies the Defendants as the Berks County Public Defender's Office, Judge Theresa Johnson (who presided over his 2017 guilty plea and remains assigned to Johnakin's 2017 cases for post-conviction proceedings), the Berks County District Attorney's Office, Warden Quigley, Deputy Warden Smith, Officer Drosdak, Berks County, and the City of Reading.

Johnakin's Second Amended Complaint indicates that he seeks to challenge his sentence in his 2017 proceedings via this lawsuit in light of the fact that his prior convictions from New York were considered in fashioning his sentence. (Sec. Am. Compl. ECF No. 15 at 10-11.) He

alleges that counsel from the Public Defender's Office did not adequately represent him during sentencing, and that Judge Johnson imposed an illegal sentence on him by considering past crimes. Johnakin also alleges that the Berks County District Attorney's Office improperly used his past crimes to suggest enhancing his sentence.

As with his prior pleadings, Johnakin also challenges various conditions at the Berks County Jail. Johnakin, who is African-American, alleges that on April 11, 2018, Officer Drosdak grabbed commissary food from him, stuck her fingers in the food, and threw it in the garbage. He claims that Officer Drosdak did this to him and five Latino inmates but did not bother the white inmates.[2] (*Id.* at 11.) Johnakin also alleges that Officer Drosdak wrote him up for failing a cell inspection even though she did not enter the cell and inspect it. He claims that Officer Drosdak wrote him up in retaliation for filing grievances about her.

Johnakin indicates that he sued Warden Quigley and Deputy Warden Smith because they allow "the constant and daily violation of Human rights and prisoners rights by Officer Drosdeck [sic] and other officers without prejudice" and they "turn[] a blind eye to all the violations in and around this jail, even going as far as constantly paying fines to continue and not attempt[t] to fix the violations that happen daily here in this jail." (*Id.* at 8.) Similarly, he sued Berks County and the City of Reading because those entities "know of everything that goes on in this jail" but "do nothing but continue to send people here without any attempt to curb the actions or protest of violations to individuals imprisoned in Berks County Jail." (*Id.* at 9.)

However, further on in the Second Amended Complaint, Johnakin indicates that he named the Warden, Deputy Warden, and municipal entities as Defendants based on the practice at Berks

---

[2] The Second Amended Complaint alleges that "the only people [Officer Drosdak] did this too [sic] were all minorities." (Sec. Am. Compl. at 11.) That is a departure from the Amended Complaint, which alleged that one of the inmates targeted by Officer Drosdak was white. (Am. Compl. at 14.)

7

County Jail of feeding inmates in their cells, which contain a toilet "right next to the desk [where they] have to place [their] tray of food." (*Id.* at 12.) As a result, inmates sometimes have to eat near a toilet containing fecal matter and urine. He also challenges a search that took place on April 26, 2018. He claims that his rights were violated when he was required to "strip down naked in view of 6 inmates and at least 4 staff members and be told to lift, pull and squat and spread [his] buttocks." (*Id.* at 13.) Johnakin also alleges that, in connection with the search, staff "took a copy of an amendment of this claim 18-cv-749 that [he] had previously filed." (*Id.* at 14.)

The Second Amended Complaint includes new allegations about Johnakin's religious rights. He is a Jehovah's Witness but alleges that "in order to get any kind of books or magazine printed by the Watchtower Bible Track Society [he] [has] to go [through] a chaplain, this means dealing with a person who represents another religion." (*Id.* at 15.) Johnakin alleges that "this kind of action goes against [his] religion its like a Muslim having to go thru a Catholic Priest to get a Koran." (*Id.*)

In addition to the above allegations, the Second Amended Complaint lists eight rights to which Johnakin believes he is entitled. In particular, he lists: (1) the right to competent representation in his criminal case; (2) the "right not to be stripped down naked and searched in front of other inmates or in view of other inmates"; (3) "the right to get soap to wash [his] body without having to pay for it or be billed for it" if he is claiming indigency; (4) the right to eat food "without being in the same cell as a toilet"; (5) the "right to eat [his] food without [an] officer placing his or her fingers in it, taking it out of [his] hands and also throwing it in the garbage"; (6) the right "to have access to religious magazines or books without having to violate [his] religion by having to go through another religion to do so"; (7) the "right to have [his]

private court papers [related to this lawsuit] not to be taken by jail staff"; and (8) the right "not to be lied to by the district attorney" in regard to his criminal case. (*Id.* at 6-7.) Johnakin seeks monetary damages and wants the State to be ordered to regulate the Berks County Jail.

## II. STANDARD OF REVIEW

As Johnakin is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Second Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Johnakin is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The vast majority of Johnakin's claims fail for the following reasons.

### A. Claims Against the Berks County Jail System

As previously noted, county jails and departments of county jails are not "persons" that are "subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No. CIV A 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Accordingly, the "Berks County Jail System," which appears to be a reference to the jail itself, is

not a proper party to this case. The Court will therefore dismiss Johnakin's claims against that Defendant. *See Smaller v. Berks Cty.*, No. CIV.A. 12-1960, 2013 WL 4079646, at *1 n.1 (E.D. Pa. Aug. 13, 2013) ("Defendant Berks County Jail System was dismissed pursuant to 28 U.S.C. § 1915(e) because a prison is not a 'person' subject to suit under the civil rights laws.").

### B. Claims Against Judge Johnson

Johnakin is suing Judge Johnson based on the Judge's imposition of a criminal sentence against him that he believes was improper. However, judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). Accordingly, the Court will dismiss Johnakin's claims against Judge Johnson because she is entitled to absolute judicial immunity.

### C. Claims Based on Johnakin's Prosecution and Sentence

Johnakin's claims challenging his sentence in his 2017 criminal cases and the proceedings leading to that sentence are not cognizable in a civil rights action. "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter

10

the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). As public dockets reflect that Johnakin's sentence and guilty plea have not been invalidated, he may not challenge the sentence in a civil rights action. Accordingly, the Court will dismiss all claims challenging Johnakin's sentence and the proceedings underlying that sentence, which disposes of all of Johnakin's claims against the Berks County Public Defender's Office and the Berks County District Attorney's Office.

### D. Claims Based on Religious Rights

Johnakin brings claims based on the fact that, as a Jehovah's Witness, he has to request his religious materials via a chaplain who does not share his religion. When a plaintiff alleges violation of his religious rights under either the First Amendment right or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., "[t]he threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Additionally, monetary damages are not available under RLUIPA. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

Notably, Johnakin does not allege that he is not receiving the religious magazines and books referenced in his Second Amended Complaint, which he presumably requires for religious purposes. Instead, his only issue is that he must request and/or obtain those materials from someone who is of a different religion than he is. The Second Amended Complaint falls far short of establishing that obtaining religious materials from a person of another religion (who presumably administers the jail's religious programs) equates to a substantial burden on Johnakin's religious rights.[3]

### E. Claims Based on Loss of a Copy of Johnakin's Amended Complaint

Johnakin is bringing a claim based on the fact that on April 26, 2018, prison staff took a "copy of an amendment of this claim 18-cv-749 that [he] had previously filed" after searching his cell. (Sec. Am. Compl. at 14.) If Johnakin is claiming that he was denied access to the courts in light of this incident, his claims fail because he has not established that the taking of his copy precluded him from proceeding on his claims. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains). To the contrary, the Second Amended Complaint reflects that the document was already filed and, in any event, Johnakin has been proceeding in this lawsuit without incident. If Johnakin is raising a due process claim based on the fact that prison staff took his property, his claims fail because he has an adequate remedy for the deprivation. *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per

---

[3] To conclude otherwise would mean that prisons and jails are required by law to obtain a chaplain representing the religious beliefs of each inmate in the institution to provide basic religious materials.

curiam) ("[D]eprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy.").

### F. Claims Based on Soap

Although unclear, Johnakin may still be trying to raise claims about access to soap at the Berks County Jail. The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373. Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that

"such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Similar to his Amended Complaint, Johnakin's Second Amended Complaint alludes to his "right to get soap to wash [his] body without having to pay for it or be billed for it" if he is claiming indigency. (Sec. Am. Compl. at 6.) However, as with his Amended Complaint, the Second Amended Complaint does not allege that Johnakin was denied soap or further elaborate on that allegation. To the contrary, Johnakin's statement suggests that he is given soap if he is indigent, but the soap is billed to his prison or commissary account. Accordingly, there are insufficient facts in the Second Amended Complaint to plausibly establish that Johnakin is being subjected to unconstitutional punishment in connection with his allegation about soap. *See McCray v. Wittig*, No. CIV.A. 14-0824 WJM, 2014 WL 1607355, at *3 (D.N.J. Apr. 21, 2014) ("Because Plaintiff was confined in the holding cell under deplorable conditions [including lack of personal hygiene supplies] for only two days, and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished.").

### G. Claims Based on Eating in Cell

Johnakin also has not stated a claim based on the fact that he is required to eat his meals in a cell containing a toilet. Again, his conditions claim depends on whether his allegations plausibly establish that the condition in question amounts to punishment. Courts have held that the practice of requiring inmates to eat in a cell containing a toilet does not violate the Constitution.[4] *See Detainees of Brooklyn House of Det. for Men v. Malcolm*, 520 F.2d 392, 396

---

[4] Many of the cases addressing this practice concern the Eighth Amendment, which applies to convicted prisoners. *See Herb v. Dauphin Cty. Prison*, Civ. A. No. 12-1402, 2012 WL 3062225, at *2 (M.D. Pa. July 26, 2012) ("Albeit distasteful, being required to eat in his cell under such conditions [i.e., where a foul ammonia odor from the toilet caused plaintiff's eyes to burn] does not amount to an Eighth Amendment deprivation."); *Walters v. Berks Cty. Prison*, Civ. A. No.

n.3 (2d Cir. 1975) ("The discomfort of eating in a cell is not, of itself, an unconstitutional hardship."); *Randall v. Cty. of Berks*, No. CV 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cty. Jail*, No. 1:12CV586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the Constitution), *report and recommendation adopted*, No. 1:12CV586, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre v. Wagner*, Civ. A. No. 11-2191, 2012 WL 299652, at *4 & *4 n.4 (E.D. Pa. Feb. 1, 2012) ("[A]s other courts have held, we conclude that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment."); *Kinser v. Cty. of San Bernardino*, No. ED CV 11-0718-RGK, 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011), (plaintiff's allegation that "she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet" did not state a Fourteenth Amendment claim), *report and recommendation adopted*, No. CV 11-0718-RGK PJW, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011). Indeed, this particular practice at Berks County Jail has been held to conform to the Fourteenth Amendment as a legitimate means of managing overcrowding and maintaining security. *See Randall*, 2015 WL 5027542, at *15; *Mestre*, 2012 WL 299652, at *4. Accordingly, Johnakin may not proceed on claims based on allegations that he must eat in a cell containing a toilet.

---

11-6357, 2012 WL 760849, at *1 (E.D. Pa. Mar. 9, 2012) (allegations that plaintiff had to sleep and eat next to a toilet while incarcerated at the Berks County Jail failed to state a claim); *Flores v. Wagner*, Civ. A. No. 11-1846, 2011 WL 2681596, at *5 (E.D. Pa. July 8, 2011) ("Requiring an inmate to eat in a cell a few feet away from a toilet is insufficient to implicate a conditions of confinement claim that is repugnant to contemporary standards of decency."); *Smith v. U.S. Penitentiary Lee*, Civ. A. No. 11-77, 2011 WL 767165, at *2 (W.D. Va. Feb. 25, 2011) (plaintiff failed to state claim based on allegations that he was required to eat meals in cell with toilet sometimes filled with excrement).

## H. Claims Based on Strip-Search

Johnakin next raises claims based on his allegation that he was strip-searched on April 26, 2018 in connection with a search of his cell. "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). Accordingly, the Supreme Court has held that jail officials may, consistent with the Constitution, strip-search pretrial detainees before admitting them into the jail's population. *Id.* at 339. The Third Circuit, in an unpublished opinion, has concluded that in the context of an emergency circumstance such as a prison lockdown, it is not unreasonable for jail officials to conduct strip-searches in groups, even if members of the opposite gender are present. *See Small v. Wetzel*, 528 F. App'x 202 (3d Cir. 2013).

Here, it is not clear whether the April 26, 2018 strip-search was reasonable under the circumstances. However, Johnakin has again failed to allege how any of the relevant Defendants—the Warden, the Deputy Warden, Berks County, or the City of Reading—could be held liable under § 1983 in connection with this event. As previously explained to Johnakin, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty.*

16

*Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Furthermore, municipal entities such as Berks County or the City of Reading may not be held liable for constitutional violations unless a municipal policy or custom caused the claimed constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). To satisfy the pleading standard, a plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

Johnakin's generalized allegations against the Warden, Deputy Warden, Berks County, and the City of Reading, do not state a claim against them. He has failed to specify any personal involvement by the Warden or Deputy Warden related to the strip search, and he has failed to identify with any specificity a municipal policy or custom that caused the claimed constitutional violation. To the contrary, Johnakin's claims against these individuals and entities appears to be based on his assumption that they are aware of all of the on-goings in the Berks County Jail by virtue of their roles in its governance. That is an insufficient basis upon which to state a claim.[5]

### I. Claims Against Officer Drosdak

All that remains are Johnakin's claims against Officer Drosdak in her individual capacity. The Court understands Johnakin to be raising an Equal Protection claim against Officer Drosdak based on the April 11, 2018 incident when she allegedly threw away Johnakin's food and the

---

[5] Likewise, Johnakin has not plausibly alleged that the Warden, the Deputy Warden, Berks County, or the City of Reading could be held liable under § 1983 for the conduct of Officer Drosdak addressed by the Second Amended Complaint. For the same reasons, Johnakin's claims against Officer Drosdak in her official capacity fail. *See Ali v. N.J. Superior Court Bd. of Bar Examiners*, 494 F. App'x 262, 264 (3d Cir. 2012) (per curiam).

food of five Latino inmates but did not bother the white inmates. The Court also understands Johnakin to be raising a retaliation claim against Officer Drosdak based on his allegation that the Officer wrote him up for failing a cell inspection in retaliation for filing grievances about her. Johnakin will be permitted to proceed on those claims at this time. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Johnakin's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with the exception of his claims against Officer Drosdak as outlined above. The Court will not give Johnakin another opportunity to amend his dismissed claims because he was already given an opportunity to amend but failed to cure the defects in those claims. An appropriate Order follows.

                                        **BY THE COURT:**

                                        *[signature]*
                                        **PETRESE B. TUCKER, J.**